# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA**
    **Plaintiff,**

  v.                **Case No. 06-CR-208**

**ARIEL ROQUE**
    **Defendant.**

## SENTENCING MEMORANDUM

Defendant Ariel Roque pleaded guilty to one count of cocaine distribution, 21 U.S.C. §§ 841(a)(1) & (b)(1)(C), and one count of marijuana distribution, 21 U.S.C. §§ 841(a)(1) & (b)(1)(D). Although defendant's offenses of conviction involved 55 grams of cocaine and 47 kilograms of marijuana, respectively, the parties agreed that his relevant conduct produced a base offense level of 34 under § 2D1.1(c)(3) of the sentencing guidelines. The parties further agreed that defendant qualified for a 2 level reduction under the safety valve provision, §§ 2D1.1(b)(11); 5C1.2(a), and a 3 level reduction for acceptance of responsibility, § 3E1.1, producing a final offense level of 29. Coupled with his criminal history category of I, the parties agreed that the advisory sentencing guidelines called for 87-108 months imprisonment. I found these guideline calculations correct and adopted them.

I then considered the sentencing factors under 18 U.S.C. § 3553(a), which convinced me that imprisonment was not necessary in this unusual case. See Gall v. United States, 128 S. Ct. 586, 596 (2007) (holding that the district court should first calculate the guidelines, then determine an appropriate sentence under all of the § 3553(a) factors); United States v. Holt, 486 F.3d 997, 1004 (7th Cir. 2007) ("Post-Booker a district court must engage in a two-part

sentencing procedure: (1) properly calculate the guidelines sentence; and (2) consider the sentencing factors set forth in 18 U.S.C. § 3553(a) to arrive at a reasonable sentence."). Given his post-offense efforts to turn his life around, I concluded that defendant deserved a chance to prove himself on probation. I explain the reasons for the sentence herein. See 18 U.S.C. § 3553(c).

## I. SENTENCING FACTORS

In imposing sentence, the district court must consider all of the factors set forth in § 3553(a). United States v. Harris, 490 F.3d 589, 593 (7th Cir. 2007), cert. denied, 128 S. Ct. 963 (2008). Those factors include:

(1)   the nature and circumstances of the offense and the history and characteristics of the defendant;

(2)   the need for the sentence imposed–

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3)   the kinds of sentences available;

(4)   the advisory guideline range;

(5)   any pertinent policy statements issued by the Sentencing Commission;

(6)   the need to avoid unwarranted sentence disparities; and

(7)   the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

2

The statute requires the court, after considering these factors, to impose a sentence that is "sufficient but not greater than necessary" to satisfy the purposes of sentencing – just punishment, deterrence, protection of the public and rehabilitation of the defendant. Id. In determining a sufficient sentence, the district court may not presume that the guideline sentence is the correct one. Rita v. United States, 127 S. Ct. 2456, 2465 (2007); United States v. Demaree, 459 F.3d 791, 794-95 (7th Cir. 2006), cert. denied, 127 S. Ct. 3055 (2007). Rather, after accurately calculating the advisory range so that it "can derive whatever insight the guidelines have to offer, [the district court] must sentence based on 18 U.S.C. § 3553(a) without any thumb on the scale favoring a guideline sentence." United States v. Sachsenmaier, 491 F.3d 680, 685 (7th Cir. 2007); accord United States v. Wachowiak, 496 F.3d 744, 749 (7th Cir. 2007); United States v. Schmitt, 495 F.3d 860, 865 (7th Cir. 2007).

## II. DISCUSSION

### A. Nature of Offense

In August 2005, a confidential informant twice purchased controlled substances from defendant. Agents arrested defendant after the second transaction and searched his home, discovering drug notes suggesting his involvement in the delivery of large amounts of marijuana in 2004 and 2005. The parties agreed to a relevant conduct drug weight of over 3500 kg of marijuana based on the notes.

### B. Character of Defendant

Twenty-nine years old, defendant had a limited prior record consisting of a 1998 carrying a concealed weapon conviction, for which he received a sentence of 30 days in jail, and a 2005 municipal disorderly conduct conviction, for which he received a fine. He fell in category I

3

under the sentencing guidelines and qualified for the safety valve.[1]

Defendant was born in Milwaukee but resided in Mexico from age four to age thirteen, when his family moved to California. At age seventeen, defendant returned to Milwaukee, and it appeared that his troubles then began. Although he described a good childhood, as a teen he joined the Mexican Posse street gang, apparently for the protection it offered against rival gangs, including the Latin Kings. He then became involved in drug trafficking.

However, defendant quit the gang prior to his arrest in this case. He also commenced a relationship with a girlfriend, with whom he lived and had two children, ages two years and three months. Defendant's girlfriend described him as a good father and provider, and her mother also made positive statements about defendant. After dropping out of high school, defendant made efforts to obtain his GED. He also developed a solid employment record, working as a welder for nearly three years, at Bucyrus for the past year earning $22/hour, and at a warehouse for over three years before that.

Defendant admitted some past experimentation with marijuana and cocaine, but he also seemed to have stopped that negative behavior, as all of his screens during his nearly two years on pre-trial release were negative. He complied with all other conditions of release and also met with law enforcement agents, providing information throughout the pendency of this case.

---

[1] The safety valve applies if (1) the defendant does not have more than 1 criminal history point under the sentencing guidelines; (2) the defendant did not use violence or threats of violence or possess a firearm or other dangerous weapon in connection with the offense; (3) the offense did not result in death or serious bodily injury to any person; (4) the defendant was not an organizer, leader, manager or supervisor of others in the offense; and (5) not later than the time of the sentencing hearing, the defendant has truthfully provided to the government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan. U.S.S.G. § 5C1.2(a).

4

**C.    Purposes of Sentencing and Consideration of Guidelines**

The guidelines recommended a term of 87-108 months, but that range was greater than necessary to satisfy the purposes of sentencing under the circumstances of this case. First, given defendant's minimal prior record and the positive changes he had made in his life over the past few years – leaving the gang, working a good job and supporting his family – I found that defendant did not present a threat to the public. See 18 U.S.C. § 3553(a)(2)(C). He appeared to have behaved in a completely pro-social manner for the past three years. I also considered the positive comments made by defendant's family members both to the pre-sentence report writer and in the letters I received. Taking him away from his family and young children now, when he seemed on the right path, just did not seem to make much sense.

Second, defendant provided assistance and information beyond that necessary to satisfy § 5C1.2(a)(5) of the safety valve provision.[2] Specifically, he provided information about investigations unrelated to this case, met with agents numerous times, both with counsel and alone, for hours, commencing shortly after his arrest in 2005 and continuing for two years. Although the government did not file a motion under U.S.S.G. § 5K1.1, I may under 18 U.S.C. § 3553(a)(1) consider cooperation as a sign of positive character development and as indicative of a desire to obey the law and live a better life in the future under § 3553(a)(2)(B) & (C). I also noted that defendant had never been to prison before and that his arrest in this matter (after which he spent about two months in custody) seemed to have a significant impact

---

[2]As noted above, that provision requires the defendant to truthfully provide to the government all information and evidence he has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan. However, it does not require him to provide "relevant or useful" information, U.S.S.G. § 5C1.2(a)(5), as is necessary under U.S.S.G. § 5K1.1. Thus, a defendant may qualify for the safety valve even though he has not provided "substantial assistance" in the prosecution of others.

5

on him. Thus, I concluded that a prison term was not needed to deter defendant from re-offending. See 18 U.S.C. § 3553(a)(2)(B).

Third, the circumstances of the offense did not require an additional period of confinement to provide just punishment. See 18 U.S.C. § 3553(a)(2)(A). There was no indication of violence or weapon possession in connection with the crimes, and the offense primarily involved marijuana rather than cocaine. The specific offenses of conviction involved relatively modest amounts. Further, defendant indicated without contradiction that his role in the relevant conduct, upon which the guideline range was primarily based, was somewhat limited. His role in the enterprise was to meet the supplier and deliver marijuana to others for repackaging and distribution; he lacked decision-making authority in the operation, acted at the direction of others and profited minimally. Defendant did not request a formal role reduction under U.S.S.G. § 3B1.2, but I nevertheless considered his somewhat inferior role in determining the sentence needed to provide just punishment under § 3553(a)(2)(A).

Finally, defendant did not appear to have any correctional treatment needs under § 3553(a)(2)(D), but his family would obviously be better served by his presence. His girlfriend did not work and apparently never had, and defendant served as the sole provider for the family. Sending defendant to prison would have likely forced her to either find a job with limited skills and no work experience, then find child care, or to rely on family or public assistance. Under the circumstances, where the need to protect the public did not require imprisonment, I also considered the needs of defendant's family in imposing sentence. Cf. United States v. Norton, 218 F. Supp. 2d 1014, 1020 (E.D. Wis. 2002) ("If the nature of the offense and the character of the defendant tend to show that no end other than punishment will be served by imprisonment, if there is no threat to the community, and if society will ultimately benefit by

6

allowing the defendant to care for his or her family, a departure is warranted.").

## III. CONCLUSION

Considering all of these factors, I found a sentence of five years probation sufficient but not greater than necessary. This sentence allowed me to maintain a great degree of control over defendant to ensure that he stayed on the right path. See Gall, 128 S. Ct. at 595 ("Offenders on probation are nonetheless subject to several standard conditions that substantially restrict their liberty."). Further, revocation of defendant's probation would permit me to impose any sentence that might originally have been imposed, see 18 U.S.C. § 3565(a)(2), up to 25 years in prison in this case. Thus, defendant faced a significant sanction if he strayed.[3]

This sentence varied significantly from the guidelines, but it was well-supported by the § 3553(a) factors. Thus, it did not create unwarranted disparity. See United States v. McGee, 479 F. Supp. 2d 910, 913 (E.D. Wis. 2007) (stating that "disparity between the sentences of two similarly situated defendants will, under the Booker advisory guideline regime, be unwarranted only if the judge fails to provide sufficient reasons for the difference, grounded in the § 3553(a) factors"). There was more to this case than drug weight, and defendant's significant post-offense turnaround warranted sentencing consideration. Section 3553(a)(3) requires me to consider the kinds of sentences available. Because probation was an available sentence for defendant's violations of §§ 841(b)(1)(C) & (D), and because a sentence of

---

[3]As noted, defendant spent about two months in custody after his arrest. I considered imposing a sentence of time served followed by lengthy supervised release. However, 18 U.S.C. § 35383(e)(3) severely limits the amount of prison time the court can impose following revocation of supervised release. After revoking probation, on the other hand, the court may re-sentence the defendant under § 3553(a).

7

probation made the most sense under all of the circumstances, I placed defendant on probation. See Gall, 128 S. Ct. at 602 (upholding sentence of probation for drug offender who left the drug business and turned his life around).

Dated at Milwaukee, Wisconsin, this 6th day of March, 2008.

/s Lynn Adelman
_____
LYNN ADELMAN
District Judge